IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND
(Civil Division)

| | |
|---|---|
| THOMAS ALSTON<br>10012 Cedarhollow Lane<br>Largo, MD 20774<br><br>    Plaintiff,<br><br>v.<br><br>HSBC CARD SERVICES INC.<br>Serve: The Corporation Trust Incorporated<br>       351 West Camden Street<br>       Baltimore, MD 21201<br><br>    Defendant.<br><br>CAPITAL ONE BANK, N.A.<br>Serve: CSC-Lawyers Incorporating Service Co.<br>       7 St. Paul Street, Suite 1660<br>       Baltimore, MD 21202<br><br>    Defendant. | CIVIL ACTION NO. CAL13-07162<br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW the Plaintiff, Thomas Alston, (hereafter the "Plaintiff") for his complaint against the Defendants HSBC Card Services Inc. ("HSBC") and Capital One Bank, N.A. ("Capital One"), alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA") and the common law tort of defamation.

### PARTIES

2. The plaintiff is a natural person and resides in the State of Maryland. The plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).



3. Defendants HSBC and Capital One are national financial services company that issue credit cards throughout the United States. Capital One acquired certain accounts from HSBC in May 2012 and became the issuer of the purported credit card account related to this action. Defendants are furnishers of information as contemplated by FCRA section 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

## FACTS

4. Defendants falsely claim that Mr. Alston obtained a credit card from HSBC in July 2010. Defendants further misrepresent that Mr. Alston used the credit card to make purchases totally in excess of $400, which the Defendants purport to have charged-off in May 2011.

5. Mr. Alston learned about the HSBC account when he obtained his Equifax credit report in March 2011.

6. Thereafter, he began disputing the account directly to Defendants and indirectly to the Defendants via the credit bureaus.

7. In his initial dispute letter Mr. Alston clearly explained that he did not open an account with HSBC in 2010, that the last card he had with HSBC was over 7 years ago, and that he stopped using credit cards. He concluded his letter expressing that his credit was just starting to improve and that the false report of this account was thwarting that progress.

8. Simultaneously or shortly after directly contacting HSBC about the erroneous account, Mr. Alston sent dispute letters to the credit reporting agencies. Upon information and belief the credit reporting agencies forwarded Mr. Alston's disputes to the Defendants.

9. The Defendants verified the erroneous charged-off account as accurate to the credit bureaus after receiving Mr. Alston's disputes via those credit bureaus.

10. In several correspondences to HSBC, Mr. Alston requested a copy of the documentation that purportedly created the account. HSBC never provided that documentation and instead just claimed that "[w]e have completed our investigation and confirmed that the account in question is your HOUSEHOLD BANK – MASTER CARD Account, which was established on July 16, 2010.

11. After more than a year of trying to get HSBC and the credit bureaus to remove the inaccurate account, Mr. Alston decided to report the account as a case of identity theft. And in correspondence dated May 20, 2012, Mr. Alston sent a letter requesting "a copy of the application and business transaction records evidencing the creation and use of the subject account." Mr. Alston referenced 15 U.S.C. §1681g(e)(1) as his authority to demand such documents. Also enclosed with his letter was a copy of his social security card, Equifax credit report, Equifax fraud alert and an Affidavit of fact.

12. As with several prior and subsequent requests for similar information, the Defendants just ignored Mr. Alston's requests without even mentioning it when Defendants responded to Mr. Alston's letters. The Defendants would simply state "[w]e have received and processed multiple disputes regarding this Account, and based on our investigations, we are reporting the account status to all relevant major consumer reporting agencies as follows: Account was sold to CAVALRY" or Defendants would state "[t]his is to confirm that we have closed our investigation on this account and have determined that this is not a fraud account."

13. After bringing suit against Experian and Transunion, Mr. Alston was eventually able to get the HSBC account removed from each of those credit bureaus' reports. But

Defendants continued to report the false account to Equifax and Equifax refused to block the reporting.

14. Defendants' records were in such disarray that it was reporting two HSBC's credit card account to Mr. Alston's Equifax credit report. The two credit accounts were identical in that both accounts were purportedly opened in July 2010. The second, duplicate account was described in the credit report as Lost/Stolen. Defendant's reporting of both accounts were false for Mr. Alston did not lose a HSBC card or have a HSBC card stolen and certainly did not use a HSBC credit card to make any purchases.

15. Mr. Alston struggled with his credit during the time period related to the disputes in this action. Based upon information and belief, the credit bureaus provided inaccurate credit reports containing the charged-off HSBC accounts to several creditors and users of Mr. Alston's credit reports.

16. As a result of Defendants' negative reporting to the credit bureaus, Mr. Alston was either denied credit or he was forced to withhold from applying for credit.

17. Defendants are still reporting the erroneous HSBC account to Equifax and thus preventing, obstructing and/or hindering Mr. Alston from obtaining credit.

### COUNT ONE: VIOLATION OF FCRA

18. Plaintiff realleges and incorporates paragraphs 1 through 17 above as if fully set out herein.

19. Defendants both negligently and intentionally violated the Fair Credit Reporting Act at 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct a reasonable investigation with respect to the HSBC credit card account.

20. At all times during its investigations of Mr. Alston's disputes, Defendants knew Mr. Alston did not have an account with HSBC.

21. On several occasions Mr. Alston requested the documents that purportedly created the subject account. Defendants never provided the requested document because the Defendants did not have any such documents. Nevertheless, the Defendants maliciously continued to report the HSBC account as if such documents existed. In the alternative, the Defendants recklessly disregard their duties to investigate the dispute. This credit reporting was inaccurate and would not have continued had Defendants conducted a proper investigation into the numerous disputes that Mr. Alston made through the credit reporting agencies.

22. Said actions of Defendants were done negligently or with a reckless disregard for Mr. Alston's rights under the FCRA at §1681s-2(b)(1)(D) & (E). Defendants had an obligation to reasonably investigate and delete the HSBC account after receiving Mr. Alston's dispute. Thereafter, the Defendants were also obligated to correctly report the results of an accurate investigation to each credit reporting agency. Defendants did not modify, delete or block the reporting of the HSBC account with Equifax, but continued to report the inaccurate and derogatory account.

23. Defendants refusal to provide a copy of the application and business transactions after Plaintiff requested those documents and provided the necessary documents for Defendants to provide the requested documents, is a violation of §1681g(e)(1).

24. As a result of conduct, actions and inactions of the Defendants, the Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: out-of-pocket costs, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

25. Defendants' conduct, actions and inactions were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

26. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO: DEFAMATION

27. Plaintiff realleges and incorporates paragraphs 1 through 26 above as if fully set out herein.

28. Defendants intentionally and maliciously instructed Equifax to report publicly that Plaintiff had a charged-off credit card account with HSBC.

29. Defendants' statements to Equifax that Plaintiff had a charged-off HSBC account were false.

30. Defendants published the statements without a privilege.

31. As a result of Defendants' publication, Plaintiff's credit scored was reduced, credit applications were denied, and credit opportunities were lost. Plaintiff has also suffered substantial, actual damages including but not limited to: out-pocket expenses, frustration, upset, humiliation, embarrassment, emotional and mental pain and suffering.

32. Defendants' conduct was the proximate cause of Plaintiff's injuries, rendering Defendants liable for compensatory damages.

WHEREFORE, your Plaintiff demands judgment for actual, statutory and punitive damages against Defendants; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the legal rate, and such other relief as the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

THOMAS ALSTON

By _____
Thomas Alston
10012 Cedarhollow Ln
Largo, MD 20774
(301) 350-5780
Pro Se Plaintiff